## STATE v. BAYNARD.

Court of Oyer and Terminer. Kent. April, 1794.

*Miller's Notebook, 38.*

*Rodney* and *Miller,* for the defendant, objected to this evidence. First, it is illegal, considered as hearsay evidence. It comes within none of the exceptions in which hearsay evidence is admitted. It cannot be considered as explanatory or illustrative of other evidence, for none has yet been given. It cannot be admitted as relating the declarations of a dying man, because at that time the person who is since dead, Negro Richard, could have had no contemplation of the future accident by which he was deprived of life. Second, it is illegal evidence as proceeding originally from the mouth of a Negro, and now offered against a white person in the trial of a criminal charge of a capital nature. It would be absurd to receive that as evidence at second hand which could not be received, even on oath administered in court from the original person. The Act of Assembly of February 3, 1787 [2 Del.Laws 887], and the principles established by this Court in the case of *Collins v. Hall,* are certainly sufficient to reject negro testimony. While our laws recognize domestic slavery, and while Negroes are kept in the servile, depressed state in which they now are, destitute of moral principle, and uneducated as to their duties to society, it would certainly be unsafe to admit them as witnesses against white persons, with whom they are generally in a jealous and invidious state.

The Attorney General argued for the admission of the evidence, not as in every respect regular evidence in itself, but as it would come in as introductory to that which was good legal evidence. (2 Harr.Ch.Pr. 614 justifies the admission of hearsay evidence in many cases, where it will illustrate what is regular and proper.) Very frequently narratives would be quite unintelligible, if it were not permitted to relate circumstances, which though illegal as substantive evidence, may tend to introduce and explain what is admissible.

READ, C. J. Though the rule be general that hearsay evidence is illegal, yet this rule is subject to many exceptions. It would

frequently be impossible to take advantage of legal evidence, without an occasional admission of hearsays to explain a narrative of facts. It is proper also to allow a witness to give his preface to his story, in most cases without interruption. But in the present case, what came from the negro man in his conversation with this witness is invalid *ab initio,* and cannot be made competent by passing through another person. Many of our laws recognize the servile state of Negroes among us and seem to require them to be deprived of many privileges enjoyed by white persons. By a law made very early after the settlement of our government, Negroes were not allowed the trial by jury, nor to carry arms, meet in companies etc., 1 Body Laws 72, 73. An additional penalty is inflicted on the criminal intercourse of the sexes, 1 Body Laws 77. No Negro can be employed to whip a white person, 1 Del.Laws 307. By our Constitution, Article 4, s. 1, suffrages at elections are confined to free white persons. While these laws and this system continue in force, it would be both illegal and impolitic to admit the testimony of Negroes in any cases whatever wherein white persons are interested. These principles and ideas were lately delivered by the court in Sussex County, in the case of *Collins v. Hall,* although that was a case somewhat different from the one now before us. Therefore the witness can not give in evidence anything which he heard from Negro Richard.

JUSTICE CLAYTON concurred.

The same witness, proceeding in his testimony, stated that about five minutes after Negro Richard had left him, he heard a gun discharged at the defendant's house, and immediately after a voice cried out, "Be gone!" He did not know whose voice it was. Question by Attorney General, "Whose voice did you think it was?"

The defendant's counsel objected to the answering this question. They insisted on the uncertainty of this kind of evidence. That especially in a case so highly penal the court and jury should have facts and not suppositions to judge by; and that the general rule is that what a witness believes and persuades himself merely, without any knowledge, is no evidence, 2 Harr.Ch.Pr. 613.

On the contrary, the Attorney General contended, this was good evidence, that there were many things which in their nature did not admit of certain knowledge, of which this was one. No one could be absolutely certain of another's voice at the distance of two hundred or three hundred yards, the real distance from the person who exclaimed in this case. Besides, this evidence

is competent on another ground, as it corroborates other testimony of a less exceptionable nature.

The Court overruled the objection, and the witness proceeded to state his belief respecting the voice which he heard.

In the course of the trial it appeared that the principal evidence against the defendant came by confession from himself; that he acknowledged he had shot the negro man, but observed in his justification that it was late at night, about ten or eleven o'clock, when the accident happened, and that he apprehended the negro man was robbing his hen house, at the time when he fired his gun toward it, and unfortunately killed the Negro. Beside this, there were some circumstances proved which were at best presumptive of the defendant's guilt. The counsel who argued for the defendant contended that confessions out of court, unattended with strong corroborative circumstances, were not to be regarded, and were the weakest evidence in the law. Fost. 243, Eden Pen.L. 166, 4 Bl.Comm. 357, Becc.Cr. 55, Constitution of Delaware. Second, that circumstances not amounting to the most violent presumption should never be considered as sufficient to convict. 1 Hale P.C. 635, 2 Hale P.C. 289, 4 Bl.Comm. 359, Eden Pen.L. 87, 88, 321; 3 Cas.Ch. 105.

The Attorney General opposed those principles in the extent to which they were carried. It is only in certain circumstances, and where it is entirely unsupported by other evidence, that confession is to be slighted. Generally, it is the very best evidence known in the law, 2 Harr.Ch.Pr. 604. As to presumptive evidence in criminal cases, it is always admitted, and in books of the highest authority it is much respected. Without it, not one criminal in one hundred could be brought to justice.

READ, C. J. I shall state the sentiments of the Court on the law which applies to this case; and as the jury recollect the evidence, they will be able to decide on that for themselves.

I apprehend the law generally to be as stated by the Attorney General. The confession of the defendant, in most cases, is certainly the best and highest evidence. This principle is laid down very fully and properly in 2 Harr.Ch.Pr. 604. It is true some modern authorities would seem to oppose this doctrine, but they only apply to cases which are unsupported by any evidence from circumstances in aid of the confession. This is clearly the principle in Leach 319. As to the rejection of presumptive evidence in criminal cases, even as far as is contended by the defendant's counsel, I cannot admit the idea. It would free almost every criminal from the fears and the dangers of a prosecution. Our

courts of criminal jurisdiction might as well be closed at once, as to countenance such doctrine.

But the counsel for the defendant further contend that as chief part of the evidence for the State is derived from the defendant's confession, and as that confession is to be taken altogether and not by parcels, that the defendant was justifiable, or at least excusable, in shooting the deceased Negro when he was at the hen house so late at night and, as the defendant supposed, was stealing his fowls. For the support of this doctrine they cite Fost. 273, 298; Sty. 469; 1 Hale P.C. 486, 487, 488. They insist on the distinction between a person's being engaged in a trespass and in a felony; and that in the latter case, it is justifiable to kill another in defense of one's property when about to be feloniously taken. I apprehend this doctrine also is carried too far. It never could be excusable to kill a human creature for stealing one fowl; and yet this is felony. Nothing would seem to be a good justification but defense against a felonious attempt on a man's person or dwelling house, attended with force; see 1 Hawk. P.C. 108, 1 Hale P.C. 486, 488. A man's being caught in the smaller acts of felony can never amount to a justification.

The jury returned their verdict, "Not guilty."